USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/07/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- X

DAVID LAPA, on behalf of himself, all   :
others similarly situated, and the   :
general public,   :
  :
          Plaintiff,   :
  :   No. 18 Civ. 7403 (JFK)
  -against-   :   **OPINION & ORDER**
  :
MASSAGE ENVY FRANCHISING, LLC,   :
  :
          Defendant.   :
  :

-------------------------------------- X

APPEARANCES

FOR PLAINTIFF DAVID LAPA
    Jason Frederick Lowe
    LAW OFFICES OF JASON LOWE
    Yecheskel Menashe
    MENASHE & ASSOCIATES LLP
    Ishan Dave
    DEREK SMITH LAW GROUP, PLLC

FOR DEFENDANT MASSAGE ENVY FRANCHISING, LLC
    Indraneel Sur
    Kahn A. Scolnick
    GIBSON, DUNN, & CRUTCHER LLP
    Luanne Sacks
    SACKS, RICKETTS & CASE, LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Massage Envy Franchising,

LLC's ("MEF" or "Defendant") motion to transfer this case

pursuant to 28 U.S.C. § 1404(a). For the reasons below,

Defendant's motion is granted.

### I. Background

#### A. Factual Background

Plaintiff David Lapa ("Lapa" or "Plaintiff") is an individual residing in Rockland County, New York. (Compl. ¶ 11.) MEF is a Delaware company with its principle place of business in Arizona. (Id. ¶ 12.) MEF monitors, regulates, controls, and directs a nation-wide chain of Massage Envy "clinics" that provide "massage and spa services." (Id. ¶¶ 12, 19.) It allegedly has over 1,000 such clinics across the country and over 1.65 million members. (Id. ¶ 19.)

On or around October 12, 2011, Lapa bought a membership at a Massage Envy clinic in Nanuet, New York. (Id. ¶ 16.) He signed the standardized Membership Agreement which provided for a twelve-month initial membership followed by an automatic renewal at $59 per month "until his membership was cancelled." (Id.) In or around March 2018, Lapa alleges that MEF unilaterally increased his monthly membership fee to $70 without informing him. (Id. ¶ 17.) Lapa failed to notice the increase since "it was a recurring charge" and the increase was "small," allowing MEF to charge Lapa $70 four times for a total overcharge of $44. (Id.) Lapa alleges this increase was "part of a concerted plan to extract as much money from [MEF's] captive membership base as possible." (Id. ¶ 25.) This practice has allegedly affected "[m]illions of individuals." (Id. ¶ 28.)

**B. Procedural Background**

On August 15, 2018, Lapa brought this action on behalf of himself and a class of "all persons in New York who, within the applicable statute of limitations preceding the filing of this action . . . were or are presently enrolled in a Massage Envy membership and whose monthly membership fee was increased above the amount stated in their Membership Agreement." (Id. ¶ 29.) Lapa alleges claims for (1) unfair and deceptive business practices in violation of N.Y. Gen. Bus. L. § 349; (2) false advertising in violation of N.Y. Gen. Bus. L. § 350; (3) negligent misrepresentation; (4) intentional misrepresentation and fraud; and (5) restitution. Though these claims all sound in state law, Lapa alleges this Court has jurisdiction pursuant to the Class Action Fairness Act because "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs," and at least one member of the class is a citizen of a state different from Defendant's state. See 28 U.S.C. § 1332(d)(2)(A).

On February 6, 2019, Defendant filed this motion to transfer.

## II. **Legal Standard**

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Deciding a §

1404(a) motion thus "requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate." AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd., 775 F. Supp. 2d 640, 645 (S.D.N.Y. 2011) (quoting Fuji Photo Film Co., Ltd. v. Lexar Media Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)).

As to the first inquiry, an "action 'might have been brought' in another forum if venue would have been proper there and the defendants would have been amenable to personal jurisdiction in the transferee forum when the action was initiated." Lihuan Wang v. Phoenix Satellite Television US, Inc., No. 13 Civ. 218 (PKC), 2014 WL 116220, at *2 (S.D.N.Y. Jan. 13, 2014) (citing Hoffman v. Blaski, 363 U.S. 335, 344 (1960)). As to the second inquiry, district courts possess broad discretion when deciding if transfer is appropriate and consider, among other things, "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and](7) the relative means of the parties." Gottlieb v. SEC, 723 F. App'x 17, 19 (2d Cir.

2018) (summary order) (quoting D.H. Blair & Co., Inc. v.
Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)); see also N.Y.
Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102,
112 (2d Cir. 2010). District courts also routinely consider
each district's "familiarity with governing law" and "trial
efficiency and the interest of justice." See, e.g., Khankhanian
v. Khanian, No. 16 Civ. 8396, 2017 WL 1314124, at *5 (S.D.N.Y.
Apr. 6, 2017); Everlast World's Boxing Headquarters Corp. v.
Ringside, Inc., 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013);
Kreinberg v. Dow Chem. Co., 496 F. Supp. 2d 329, 330 (S.D.N.Y.
2007). The burden rests on the moving party to make a "clear
and convincing" showing that the balance of these factors favors
their choice of forum. N.Y. Marine, 599 F.3d at 113-14.

### III. Discussion

Defendant argues that this case should be transferred to
the Northern District of California where Baerbal McKinney-
Drobnis v. Massage Envy Franchising, LLC, No. 16-cv-6450 (N.D.
Cal., filed Nov. 4, 2016) ("McKinney"), "a nationwide class
action based on nearly identical facts and legal theories[,] has
been pending for more than two years" before Judge Maxine
Chesney. (Mem. of L. in Supp. of Def.'s Mot. to Transfer at 1,
ECF. No. 28 (filed Feb. 6, 2019) [hereinafter "Mem."].)

As Lapa does not dispute that this action might have been
brought in the Northern District of California, the only

remaining question is whether transfer is appropriate given the above-mentioned factors. Khankhanian, 2017 WL 1314124, at *5.

## A. Trial Efficiency & the Interest of Justice

Defendant argues that this action is substantially similar to McKinney as both bring putative class actions against MEF for its alleged practice of unilaterally increasing monthly membership fees. (Mem. at 2-3, 6.) "[T]he Second Circuit has held that '[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.'" Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (quoting Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968)); see also Forjone v. California, 425 F. App'x 73, 74-75 (2d Cir. 2011) (affirming a district court's order to transfer an action to a district with a pending action brought by several of the same plaintiffs against several of the same defendants and involving substantially similar claims as "hearing the two actions in the same district [is] more efficient and convenient for both the court and the parties and [minimizes] the risk of reaching inconsistent results."); Cain v. Twitter, Inc., No. 17 Civ. 122 (PAC), 2017 WL 1489220, at *3-4 (S.D.N.Y. Apr. 25, 2017)

(transferring an action to another district where there was a
pending action with "significant factual and legal overlap").
This factor alone "may be determinative." In re Anadarko, No. 10
Civ. 4905 (PGG), No. 10 Civ. 5894 (PGG), 2012 WL 12894796, at
*10 (S.D.N.Y. Mar. 19, 2012) (quoting Williams v. City of New
York, No. 03 Civ. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y
Feb. 21, 2006) (collecting cases)); see also Cain, 2017 WL
1489220, at *3.

The Court has reviewed the complaints in both actions and
finds them to be related and substantially similar.  Both name
the same sole defendant, both involve MEF's alleged practice of
unilaterally changing members' monthly payments, and raise
nearly identical issues of fact and law. (Compare Compl. ¶¶ 1-
38, with Am. Compl. ¶¶ 1-34, Baerbal McKinney-Drobnis v. Massage
Envy Franchising, LLC, No. 16-cv-6450 (N.D. Cal. Apr. 28, 2017),
ECF No. 60 [hereinafter "McKinney Compl."].)  Indeed, as
Defendant points out, Lapa's complaint extensively copies the
McKinney complaint word-for-word, differing primarily to explain
Plaintiff-specific facts, assert claims under New York law, and
limit its class members to New York. (Compare Compl. ¶¶ 1-4, 12,
20-28, 32, 36, with McKinney Compl. ¶¶ 1-4, 15, 18-25, 27, 31.)
Notably, Lapa's complaint lists "questions of law and fact" that
are identical save a single question which Lapa omitted.
(Compare Compl. ¶ 36, with McKinney Compl. ¶ 31.)  Given the

7

overwhelming similarity between this action and McKinney, that McKinney has already proceeded to the point of an imminent settlement (Declaration of Luanne Sacks at 2, ECF No. 33 (filed Feb. 6, 2019); Letter of April 19, 2019 at 1, ECF No. 34 (filed Apr. 19, 2019)), that Lapa is a McKinney class member (McKinney Compl. ¶ 26), and that there might otherwise be inconsistent results, the Court finds that trial efficiency and the interest of justice clearly weigh strongly in favor of transfer.

## B. Convenience of the Witnesses

"Courts typically regard the convenience of the witnesses as the most important factor in considering a § 1404(a) motion to transfer." Whitehaus Collection v. Barclay Prods., Ltd., No. 11 Civ. 217 (LBS), 2011 WL 4036097, at *4 (S.D.N.Y. Aug. 29, 2011) (quoting Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) (collecting cases)). When evaluating this factor the "Court must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Tlapanco v. Elges, 207 F. Supp. 3d 324, 329 (S.D.N.Y. 2016). The moving party "must provide the court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." Kiss My Face Corp. v. Bunting, No. 02-CV-2645 (RCC), 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003) (collecting cases).

The list of potentially inconvenienced witnesses that Defendant provides names several high-level MEF officers, all of whom work and reside in Arizona. (Decl. of Melanie Hansen ¶ 5, ECF No. 30 (filed Feb. 6, 2019).) MEF argues that (1) not transferring this case would require these witnesses "to testify (at least) twice and on opposite coasts—which would be burdensome [and] inconvenient," and (2) it is much more convenient for the witnesses to travel from Arizona to California than to New York. (Mem. at 9.) To minimize any inconvenience to Lapa, MEF agrees to depose him and any other New York-based witnesses in New York. (Id. at 10.)

Transferring this action to the same district as McKinney would allow the identified witnesses the opportunity to combine necessary trips and testimony relating to both actions, rather than having to make separate trips to California and New York. As these witnesses are the very people who made the alleged plan to unilaterally increase prices, they are extremely material to the case. Even if, as Lapa asserts, Defendants could not avoid making multiple separate trips, since the cases are at such different stages (Pl.'s Opp. to Def.'s Mot. to Transfer at 11, ECF No. 24 (filed January 4, 2019) [hereinafter "Opp."]), Arizona is far closer to the Northern District of California than it is to the Southern District of New York, considerably decreasing their travel time and costs. Defendant's offer to

depose Lapa and any other New York-based witness in New York also minimizes the Plaintiff-side inconvenience. In any case, the materiality of their witnesses is comparatively limited as they will have little insight into how the alleged policy was made and who is liable. Accordingly, since transfer would result in little—if any—inconvenience to Lapa while making the venue substantially more convenient for the Defendant, this factor weighs in favor of transfer. See Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010).

### C. Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." Sentegra, LLC v. ASUS Computer Int'l, 15 Civ. 3768 (GHW), 2016 WL 3093988, at *4 (S.D.N.Y. June 1, 2016) (quoting Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)).

Here, Defendant argues that requiring its witnesses—all of whom are senior executives at MEF—to undergo additional travel to a separate district would disrupt its business. (Mem. at 9.) Lapa raises several arguments in response which, in sum, essentially state that because MEF acted in New York, it should have to face the consequences of litigating here. (Opp. at 13-15.) While the Court is sympathetic to this argument, it is

largely irrelevant to this factor. Here, Defendant's business would be disrupted by having to litigate two separate actions on different coasts. By contrast, Lapa and any of his class members can be deposed in New York which, as Lapa himself has argued, minimizes the inconvenience to them. (Opp. at 14 (citing Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006)). Indeed, it is exceedingly likely that even if the case were transferred, none of them would have to travel to California at all. Accordingly, this factor weighs in favor of transfer. Sentegra, 2016 WL 3093988, at *4.

### D. The Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." Tlapanco, 207 F. Supp. 3d at 331 (quoting Steck v. Santander Consumer USA Holdings Inc., No. 14-CV-6942 (JPO), 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015)). The locus is the place where the "acts or omissions for which [d]efendants could be held liable occurred." Id. (quoting Solar v. Annetts, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010)). Here, the damages for which Lapa alleges Defendant is liable arise from Defendant's "concerted plan" to unilaterally raise monthly membership dues nationwide. (Compl. ¶¶ 17, 24, 25, 28.) Thus, the locus of operative facts is in Arizona, where Defendant made the decisions that resulted in that plan. Cain, 2017 WL 1489220 at *4 (finding the locus of

operative facts to be the office where defendant company made the decisions central to plaintiffs' complaint); Compl. ¶ 12 (alleging Defendant's principal place of business is in Arizona); Opp. at 11-12 (alleging that Defendant's headquarters is in Arizona, that it contemplates calling witnesses from that headquarters, and that the bulk of relevant documents and information in this action are in Arizona). Since the locus of operative facts is in neither the district where Lapa brought this case nor the transfer district, this factor is neutral.

### E. Location of the Documents

As both parties concede, the location of documents is given little weight and is mostly neutral in today's world of widespread electronic document production. Tlapanco, 207 F. Supp. 3d at 330-31; see also Mem. at 11 (citing Khankhanian, 2017 WL 1314124, at *6); Opp. at 12-13 (collecting cases). Given this reality, this factor is neutral.

### F. Plaintiff's Choice of Forum

A "plaintiff's choice of forum is presumptively entitled to substantial deference." Gross v. British Broad. Corp., 386 F.3d 224, 230 (2d Cir. 2004). However, "the weight afforded to a plaintiff's choice is diminished 'where the operative facts lack a meaningful connection to the [chosen] forum.'" Rosen v. Ritz-Carlton Hotel Co. LLC, No. 14-cv-1385 (RJS), 2015 WL 64736, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting GlaxoSmithKline Biologicals,

S.A. v. Hospira Worldwide, Inc., No. 14-CV-1395 (PKC), 2013 WL
2244315, at *3 (S.D.N.Y. May 21, 2013)). As discussed above,
the operative facts in this case took place in Arizona, not in
New York. Since they lack any meaningful connection to the
Southern District of New York, Lapa's choice of forum is not
entitled to substantial deference. Rosen, 2015 WL 64736, at *2;
Khankhanian, 2017 WL 1314124, at *6.

### G. Relative Means of the Parties

"Where disparity exists between the parties, such as an
individual plaintiff suing a large corporation, the relative
means of the parties may be considered." Cain, 2017 WL 1489220
at *5 (quoting Berman v. Informix Corp., 30 F. Supp. 2d 653, 659
(S.D.N.Y. 1998)). "A party arguing for or against transfer on
these grounds must offer documentation to show that transfer
would be unduly burdensome to his finances." Dickerson v.
Novartis Corp., 315 F.R.D. 18, 31 (S.D.N.Y. 2016) (quoting
Seltzer v. Omni Hotels, No. 09-cv-9115 (BSJ)(JCF), 2010 WL
3910597, at *5 (S.D.N.Y. Sept. 30, 2010)).

Here, there is no question that Lapa, an individual, is of
more limited means than Defendant, a corporation. Lapa's entire
argument on this issue, however, is that he "is an individual
who will incur significantly greater litigation expenses and
attorney's fees if they are unable to litigate this matter in
their home state of New York." (Opp. at 15.) Similarly,

Defendant contends that it met its burden by showing that "requiring the pertinent MEF witnesses to testify in this action and in the McKinney Action would be burdensome, inconvenient, and disruptive." (Reply in Supp. of Def.'s Mot. to Transfer at 9, ECF No. 32 (filed Feb. 6, 2019).) These assertions are both insufficient to show that transfer would be unduly burdensome. See Dickerson, 315 F.R.D. at 31 (finding plaintiff's contention that her "litigation costs will increase substantially" if this case is transferred from her home forum "due to increased travel costs for her" attorneys, experts, and witnesses to be insufficient to show transfer would be unduly burdensome); Wechsler v. Macke Int'l Trade, Inc., No. 99 Civ. 5725 (AGS), 1999 WL 1261251, at *8 (S.D.N.Y. Dec. 27, 1999) (finding plaintiff's assertion that their means are "extremely limited" to be insufficient to show transfer would be unduly burdensome). This factor, thus, weighs slightly against transfer.

### H. Ability to Compel Attendance of Unwilling Witnesses

Neither party asserts that any witnesses would be unwilling to testify in either forum and, thus, "the availability of process to compel testimony is irrelevant to [this] transfer analysis." Sentegra, 2016 WL 3093988, at *6 (quoting Rosen, 2015 WL 64736, at *4). Accordingly, this factor is neutral. Id.

### I. Forum's Familiarity with Governing Law

"In federal court, familiarity with the governing law is generally given little weight when considering transfer of venue." Cain, 2017 WL 1489220 at * 5 (quoting Royal & Sun Alliance Ins., PLC v. Nippon Express USA, Inc., 202 F. Supp. 3d 399, 410 (S.D.N.Y. 2016)). When, however, the suit is premised on state law, this factor becomes more important. Rosen, 2015 WL 64736, at *5 (citing NBA Props., Inc. v. Salvino, Inc., No. 99-CV-11799 (AGS), 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000)).

Here, Lapa's asserted claims appear to arise under New York law. All claims, however, are common enough that the Northern District of California has had ample experience adjudicating them, often in the context of a putative class action. See, e.g., Zaragoza v. Apple Inc., No. 18-cv-6139-PJH, 2019 WL 1171161 (N.D. Cal. Mar. 13, 2019) (resolving a motion to dismiss in a class action with claims arising under N.Y. Gen. Bus. L. §§ 349 & 350); Strumlauf v. Starbucks Corp., No. 16-cv-1306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) (resolving a motion for summary judgment in a class action with claims arising under N.Y. Gen. Bus. L. §§ 349 & 350); see also In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070 (N.D. Cal. 2011) (applying New York's negligent misrepresentation law in a motion to dismiss); RSI Corp. v. Int'l Bus. Machs. Corp., No. 5:08-cv-3414 RMW (RS), 2009 WL 605837 (N.D. Cal. Mar. 9, 2009) (applying New York's intentional misrepresentation and fraud law

in a motion to dismiss).  This Court, thus, has little doubt that Judge Chesney is more than qualified to apply New York law to this case.  Accordingly, this factor weighs only slightly against transfer.

## Conclusion

For the reasons above, (1) trial efficiency and the interest of justice weigh strongly in favor of transfer, (2) convenience of the witnesses and parties weigh in favor of transfer, (3) the relative means of the parties and the forum's familiarity with governing law weigh slightly against transfer, and (4) all other factors are neutral.  This Court, thus, finds that transfer to the Northern District of California is appropriate.

Defendant's motion to transfer venue is, thus, GRANTED. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 27, transfer this case to the Northern District of California, and close this case.

**SO ORDERED.**

Dated:     New York, New York
           May 7 , 2019

           _John F. Keenan_
           John F. Keenan
           United States District Judge